# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DENITA G.,[1]                                    Case No. 1:21-cv-515
o/b/o D.T.J.J., MINOR                            Black, J.
    Plaintiff,                           Litkovitz, M.J.

    vs.

COMMISSIONER OF                                  **REPORT AND**
SOCIAL SECURITY,                                 **RECOMMENDATION**
    Defendant.


Plaintiff Denita G., on behalf of her minor daughter, D.T.J.J. (claimant), brings this action

pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of

Social Security (Commissioner) that claimant's disability ceased on May 13, 2019, and she no

longer qualified for Supplemental Security Income (SSI) child benefits.   This matter is before the

Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response, (Doc. 14), and

plaintiff's reply (Doc. 19).

## I.  Procedural Background

Plaintiff filed an application for child SSI benefits on claimant's behalf in May 2012.   (Tr.

185-90).   In a July 25, 2012 determination, the Commissioner found claimant disabled due to

speech and language delays that functionally equaled the criteria of a listing with an onset date of

May 17, 2012.   (Tr. 15, 18, 75-90).   The Commissioner determined that claimant's impairments

continued to functionally equal the listings as of November 18, 2015.   (Tr. 49).

Following a continuing disability review, including reconsideration by a state agency

disability hearing officer, the Commissioner determined that claimant's disability ceased in May

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2019 because claimant had experienced medical improvement.   (Tr. 67, 74, 91, 105-40).

Plaintiff thereafter requested and received a *de novo* hearing of the case by Administrative Law

Judge (ALJ) Christopher S. Tindale.   Plaintiff appeared and testified at the ALJ hearing on July

13, 2020 via telephone.   (Tr. 38-48).   On September 10, 2020, the ALJ issued a decision finding

that claimant's disability ended as of May 13, 2019, and she had not become disabled again since

that date.   (Tr. 15-31).   Plaintiff's request for review by the Appeals Council was denied, making

the decision of the ALJ the final decision of the Commissioner.   (Tr. 1-6).

## II.  Analysis

### A.    Legal Framework for Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as

defined in the Act.   42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.   Eligibility is dependent upon

disability, income, and other financial resources.   *Id.*   An individual under the age of 18 is

considered disabled for purposes of SSI "if that individual has a medically determinable physical

or mental impairment, which results in marked and severe functional limitations, and which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."   42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining

whether a child is disabled for purposes of children's SSI benefits:

1.  Is the child engaged in any substantial gainful activity?   If so, benefits are
    denied.

2.  Does the child have a medically severe impairment or combination of
    impairments?   If not, benefits are denied.

3.  Does the child's impairment meet, medically equal, or functionally equal any in
    the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpart P, 20
    C.F.R. § 416.924(a)?   If so, benefits are granted.

2

20 C.F.R. § 416.924(a)-(d).

An impairment which meets or medically equals the severity of a set of criteria for an impairment in the listings, or which functionally equals a listed impairment, causes marked and severe functional limitations. *Id.* at § 416.924(d). An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. *Id.* at § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. *Id.* at § 416.924(d)(2). Using this three-step process, the Commissioner found claimant disabled as of May 17, 2012 because her impairments functionally equaled the listings. (Tr. 49, 75-90).

Where, as here, a child has previously been found to be disabled under the Social Security regulations, continued eligibility for benefits must be reviewed periodically. *Id.* at § 416.994a(a). The Commissioner must first determine whether there has been medical improvement in the child's condition. If there has been no medical improvement, the child is found to still be disabled. *Id.* at § 416.994a(a)(1). If there has been medical improvement, the Commissioner

3

evaluates whether the child's impairments still meet or equal the severity of the listed impairment that it met or equaled before; if they do, the child is found to still be disabled. *Id.* If the impairments no longer meet or equal the severity of the listed impairment, the agency proceeds to determine whether the child's impairments meet or medically or functionally equal a listing. *Id.*

In determining whether a child's impairments functionally equals a listing, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal a listing, an impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* at § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. *Id.* at § 416.926a(a)(1)-(3).

**B.     The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process under the child disability standards and made the following findings of fact and conclusions of law:

1. The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated November 18, 2015.   This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: speech and language delays.   This impairment was found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

3. Medical improvement occurred as of May 13, 2019 (20 CFR 416.994a(c)).

4. The claimant was born [in] 2004.   Therefore, she was an adolescent[] as of May 13, 2019.   The claimant is currently an adolescent (20 CFR 416.926a(g)(2)).

5. Since May 13, 2019, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments (20 CFR 416.994a(b)(2)[,] . . . 419.926a and SSR 05-03p).

6. Since May 13, 2019, the claimant has had the following severe impairments: asthma, eczema, an unspecified neurodevelopmental disorder, and an unspecified depressive disorder (20 CFR 416.924(c)).

7. Since May 13, 2019, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

8. Since May 13, 2019, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

9. The claimant's disability ended as of May 13, 2019, and the claimant has not become disabled again since that date (20 CFR 416.994a).

(Tr. 18-22, 30).

In determining that claimant's impairments were not functionally equivalent to a listed

impairment, the ALJ found:

a. Since May 13, 2019, the claimant has had marked limitation in acquiring and using information.

b. Since May 13, 2019, the claimant has had less than marked limitation in attending and completing tasks.

c. Since May 13, 2019, the claimant has had less than marked limitation in interacting and relating with others.

d. Since May 13, 2019, the claimant has had no limitation in moving about and manipulating objects.

e. Since May 13, 2019, the claimant has had less than marked limitation in the ability to care for herself.

f. Since May 13, 2019, the claimant has had less than marked limitation in health and physical well-being.

(Tr. 24-30).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to

6

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen,* 478 F.3d at 746).

    **D.    Relevant Medical and Educational Records**

        1.    <u>Educational records</u>

Claimant's Individualized Education Plan (IEP) from January 2017 (seventh/eighth grade) reflected that she learned best in a "self contained classroom with small group instruction and a significantly modified curriculum. . . ." (Tr. 585). The 2017 IEP also described that claimant needed "explicit modeling and repetition with various opportunities to practice new material[,]" often did "not ask for help when . . . struggling[,]" and "specifically struggled with vocabulary and listening comprehension." (*Id.*).

An Evaluation Team Report (ETR) from January 2018 (eighth grade) reflected that claimant initially received special education services beginning in 2011 due to intellectual disability. (Tr. 311). On the Wechsler Intelligence Scale for Children, 4th Edition (WISC-4), claimant had a full-scale IQ score of 53 (extremely low), verbal comprehension score of 59 (extremely low), perceptual reasoning score of 49 (extremely low), working memory score of 56 (extremely low), and processing speed score of 85 (below average). (Tr. 313). Intervention specialist Erin Huntsberry noted that while claimant's modified curriculum was at a third to fourth grade level, claimant "would be best served by instructional materials prepared at the *second* grade level." (Tr. 317, *see also* Tr. 321 ("[Claimant] does well with answering comprehension questions pertaining to a 2nd grade or lower level instructional text.")). Speech-language pathologist Michelle Burke noted that claimant had been administered the Comprehensive

Assessment of Spoken Language, 2nd Edition (CASL-2) in December 2017 "to assess oral language skills, including her comprehension, expression, and retrieval." (Tr. 320). Where standard scores fell between 85 and 115, plaintiff scored 75 on synonyms, 73 on sentence expression, 78 on nonliteral language, 86 on meaning from context, 83 on double meaning, and 73 on overall general language ability. (Tr. 320-21). The ETR concluded that claimant required specially designed instruction due to the fact that her "academic performance . . . range[d] from a first to fourth grade level, despite intensive academic service and supports." (Tr. 326). The ETR noted that this performance was "significantly below that of same-aged peers." (*Id.*).

An IEP from December 2018 (ninth/tenth grade) reflected that claimant was instructed using an Ohio Extended Standards[2] modified curriculum in a self-contained classroom to accommodate her reading, mathematics, and speech and language difficulties. (Tr. 652-53, 664). Intervention specialist Patrick McWilliams completed a teacher questionnaire in February 2019 (ninth grade). (Tr. 299-308). Mr. McWilliams reported that claimant was performing at a fifth grade level in reading, a sixth grade level in written language, and a fourth grade level in math. (Tr. 307). Mr. Williams indicated that claimant struggled most with math (Tr. 300) and had "obvious problem[s]" with comprehending and doing math problems and understanding and participating in class discussions under the childhood functional domain of acquiring and using information. (*Id.*). McWilliams marked all other childhood-domain-related activities as reflecting either no problem or only a slight problem. (Tr. 300-04). An IEP from December 2019 (tenth/eleventh grade) reflected that claimant continued to work in a self-contained

---

[2] According to the Ohio Department of Education: "Ohio's Learning Standards – Extended (OLS-E) also are commonly known as 'the extended standards.' These standards help to ensure that students *with significant cognitive disabilities* are provided with multiple ways to learn and demonstrate knowledge." https://education.ohio.gov/Topics/Special-Education/Ohios-Learning-Standards-Extended (emphasis added) (last visited June 13, 2022).

classroom using Ohio's Extended Standards and recommended that she remain in that environment. (Tr. 436-37, 439). The 2019 IEP also noted that claimant needed to improve her "mathematics" as well as "writing paragraphs, . . . expressing complex concepts, . . . writing and speaking language skills, . . . and reading comprehension. . . ." (Tr. 437).

　　　　2.　Consultative examination

In April 2019, Jessica Twehues, Psy.D. evaluated claimant for disability purposes when she was 15 years-old and in ninth grade. (Tr. 719-24). Dr. Twehues noted that plaintiff had an IEP, struggled particularly with math, and received As and Bs with special accommodations. (Tr. 720). Dr. Twehues recorded that claimant reported being sad about half of the time, primarily due to bullying at school. (*Id.*). Dr. Twehues observed that claimant's speech was 100 percent understandable, and her receptive language skills appeared fair—although she required simplification of the word "agitated." (Tr. 721). Dr. Twehues reported that claimant's thoughts seemed logical, coherent, and goal-directed; her mood appeared to be euthymic; and her affect was appropriate. (*Id.*).

Dr. Twehues' assistant administered the WISC, 5th Edition (WISC-5), and Dr. Twehues noted that the results "appear[ed] to reflect a valid estimate of current intellectual abilities." (*Id.*). Claimant had a full-scale IQ score of 60 (extremely low range). (*Id.*). Dr. Twehues noted that claimant's "borderline verbal comprehensive abilities were significantly more developed than her extremely low nonverbal reasoning abilities[,]" which was characteristic of the results in "anxious and/or neurologically impaired individuals." (*Id.*). Dr. Twehues noted that claimant's visual-spatial score was particularly low. (Tr. 722). Dr. Twehues remarked that claimant's extremely low processing speed index score was "somewhat lower than [she] would have expected

9

given [claimant's] clinical presentation and conversational abilities during the interview" but "consistent with her [ETR] which indicates that [claimant] was diagnosed with a cognitive disability." (*Id.*). Overall, Dr. Twehues noted that "variability across areas assessed" meant that claimant's full-scale IQ score "should be interpreted with caution" and claimant's test results were "lower than [she] would have expected given [claimant's] clinical presentation. (Tr. 721 and 723). Given that Dr. Twehues observed a higher level of functioning, she assessed an unspecified neurodevelopmental disorder and an unspecified depressive disorder as opposed to an intellectual disorder; but she also noted that claimant was "expected to experience academic difficulty as a result of neurodevelopmental delay." (Tr. 723-24). Dr. Twehues also stated that claimant was "likely to have difficulty sustaining focus for prolonged periods of time[,]" "prone to bullying and manipulation[,]" and could struggle to know how to seek help/cope with her learning difficulties. (Tr. 723-24).

        3.   <u>State agency review</u>

State agency pediatrician Louis Goorey, M.D., and psychologist Aracelis Rivera, Psy.D., reviewed Dr. Twehues' report along with other medical and educational record evidence. (Tr. 51-65). They opined that claimant had a marked limitation in acquiring and using information based on claimant's teacher's report of an "obvious problem" in this area, Dr. Tewhues' report and WISC testing, and claimant's December 2017 CASL-2 scores. (Tr. 61). They assessed either no limitation or less than marked limitation in all other childhood functional domains. (Tr. 61-62). Drs. Goorey and Rivera concluded that plaintiff no longer functionally equaled the listings. (Tr. 62).

State agency pediatrician Bruce Mirvis, M.D., and psychologist Jennifer Swain, Psy.D., also reviewed claimant's file.  (Tr. 909-14).  They opined that claimant had a "marked" limitation in acquiring and using information for the same reasons articulated by Drs. Goorey and Rivera.  (Tr. 911).  They assessed claimant's other childhood functional domains as either less than marked or not limited.  (Tr. 911-12).  Drs. Mirvis and Swain accordingly supported cessation of disability due to medical improvement.  (Tr. 914).

### E.    Specific Errors

Plaintiff argues that the ALJ's finding that claimant experienced medical improvement is not supported by substantial evidence.   In particular, she argues that the Childhood Disability Evaluation completed by Bruce Mirvis (Tr. 909-14) and found by the ALJ to be persuasive (*see* Tr. 23) is not consistent with the evidence of record, including testing performed by claimant's school, Dr. Twehues' consultative examination, and claimant's use of a significantly modified curriculum. Plaintiff also argues that claimant's IQ scores should have prompted explicit consideration of Listing 112.05B.   Relatedly, plaintiff argues that, in addition to *at least* a marked limitation in understanding, remembering, or applying information, the ALJ also should have found a marked limitation in concentrating, persisting, or maintaining pace for purposes of Listing 112.05B.

In response, the Commissioner argues that substantial evidence supports the ALJ's conclusion that as of May 13, 2019, plaintiff experienced medical improvement and no longer had extreme limitation in the domain of acquiring and using information.   The Commissioner notes that the ALJ acknowledged that claimant continued to have an IEP but nevertheless relied in part on Dr. Twehues' report to conclude that claimant experienced medical improvement.   As it relates to Listing 112.05B, the Commissioner notes that Dr. Twehues did not diagnose claimant

11

with an intellectual disorder and, rather, noted higher functioning than was suggested by claimant's test scores. The Commissioner further notes that claimant did not demonstrate either extreme limitation in one area or marked limitations in two areas of mental functioning as is required by Listing 112.05B. As it relates to Listing 112.11, the Commissioner argues that it is not applicable because plaintiff did not show that claimant's neurodevelopmental disorder produced significant difficulties with learning and using academic skills.

In reply, plaintiff argues that the Commissioner overemphasizes Dr. Twehues' diagnosis at the expense of other more relevant record evidence. Plaintiff argues that the ALJ ignored adaptive functioning deficits related to emotional skills and coping mechanisms (*see* Tr. 300 and 304) and below average/extremely low adaptive behavior assessment scores (*see* Tr. 314). Plaintiff also argues that the ALJ's brief mention of claimant's IEP is not the functional equivalent of due consideration of the relatively extreme accommodations actually contained in that IEP.

### 1. Medical Improvement

The Court begins with the ALJ's determination regarding claimant's medical improvement. *See* 20 C.F.R. § 416.994a(a)(1). The regulations define "medical improvement" as "any decrease in the medical severity of [claimant's] impairment(s) which was present at the time of the most recent favorable decision that [claimant was] or continued to be disabled." *Id.* at § 416.994a(c). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs or laboratory findings associated with your impairment(s)[.]" *Id.* There must be "substantial evidence" of "medical improvement" and proof that the claimant is no longer disabled to satisfy the medical improvement standard. *Niemasz v. Barnhart*, 155 F. App'x 836, 840 (6th Cir. 2005) (citing 42 U.S.C. § 423(f)(1)). If the

12

Commissioner's findings on the issue of medical improvement are supported by substantial evidence, the Commissioner's decision must be affirmed. *Id.*

Substantial evidence supports the ALJ's determination that claimant experienced medical improvement. In the November 2015 CPD, the Commissioner found that claimant continued to "functionally equal" the listings given her "[e]xtreme limitations" in acquiring and using information due to her speech and language delays. (Tr. 18 and 49). In particular, the Commissioner had relied on claimant's 2015 Clinical Evaluation of Language Fundamentals, 4th Edition (CELF-4) scores (receptive language 61, expressive 59, core 50); 2012 CELF-4 scores (receptive language 55, expressive 53, core 50); and claimant's school's remark that she "need[ed] to work on comprehension and vocabulary." (*See* Tr. 49, referring to Tr. 232 (October 2015 teacher questionnaire), Tr. 509-511 (November 2015 speech and language evaluation), and Tr. 512-17 (Childhood Disability Evaluation Form)). In February 2016, claimant's IEP (sixth/seventh grade) reflected that she continued to qualify for special education services related to "Intellectual Disability"—noting that claimant needed to increase reading comprehension, basic reading, and expressive and receptive language skills. (Tr. 552). (*See also* Tr. 241 (July 2016 teacher questionnaire reflected "obvious problem[s]" in seven of ten activities in the functioning domain of acquiring and using information accompanied by a note: "Intellectual Disability. . . .")).

In his assessment of medical improvement, the ALJ highlighted claimant's 2014 full-scale IQ score of 53, which is classified as extremely low, and the February 2016 IEP assessment that continued to categorize claimant as having an "Intellectual Disability." (Tr. 19, referring to Tr. 551-52 (February 2016 IEP) and Tr. 313 (January 2018 ETR reflecting WISC-4 results)). The ALJ found that claimant's below average (as opposed to extremely low) December 2017 CASL-2

13

general language ability score of 73 demonstrated "some improvement since CPD." (Tr. 20, referring to Tr. 321 (January 2018 ETR)). The ALJ also highlighted Dr. Twehues' assessment that claimant "appeared to function at a higher level" than what was suggested by her most recent (and improved) full-scale IQ score of 60. (*Id.*, referring to Tr. 722-23).

In addition to these somewhat improved standardized test results, the ALJ discussed other signs of claimant's medical improvement in his discussion of the acquiring and using information childhood functional domain. (Tr. 25). While noting that plaintiff still had an IEP, the ALJ noted that plaintiff "continue[d] to progress in school with mostly passing grades." (*Id.*) (*See also* Tr. 374 and 376 (documents reflecting claimant's Mt. Healthy grades between 2015-19) and Tr. 312 (January 2018 ETR showing As and Bs in sixth and seventh grades)). The ALJ also highlighted the February 2019 teacher questionnaire reflecting that claimant struggled most with math and had "obvious problem[s]" with comprehending and doing math problems and understanding and participating in class discussions; but that claimant exhibited either no problem or only a slight problem in all other childhood functional domain-related activities. (Tr. 25, referring to Tr. 300-04). This included only "slight problem[s]" with understanding school and content vocabulary and reading and comprehending written material. (Tr. 300). Finally, the ALJ discussed the childhood functional domain assessments of the state agency reviewing doctors, which supported a marked as opposed to an extreme limitation in the area of acquiring and using information. (*Id.*, referring to Tr. 51-65, 909-14). The evidence highlighted by the ALJ is substantial evidence supporting his conclusion that claimant experienced a "decrease in the medical severity of [her] impairment(s) which was present at the time of the most recent favorable decision that [she] . . . continued to be disabled." 20 C.F.R. § 416.994a(c).

Plaintiff argues otherwise, pointing to claimant's January 2017 IEP, which reflected that claimant "learn[ed] best in the self contained classroom with small group instruction and a significantly modified curriculum[,]" required "explicit modeling and repetition with various opportunities to practice[,]" and "specifically struggled with vocabulary and listening comprehension." (Tr. 585). Plaintiff also points to claimant's January 2018 ETR (eighth/ninth grade), which suggests that claimant functioned best at a second grade reading level. (Tr. 317, 321). Plaintiff emphasizes that claimant's 2018 ETR concluded with recommendations designed to accommodate claimant's "cognitive deficits[,]" "below average language skills[,]" and "processing delays" (best categorized as an "Intellectual Disability") that left her "functioning several years below her same aged peers. . . ." (Tr. 319, 322, 324, and 326). Plaintiff also stresses that claimant's December 2019 IEP reflected that she continued to use a self-contained classroom. (Tr. 437). None of this, however, undercuts the substantial evidence cited by the ALJ; in particular, the facts that claimant's IQ and standardized language ability scores had somewhat improved, Dr. Twehues found claimant's functioning to be better than suggested by her IEPs and full-scale IQ score, and Dr. Twehues did not diagnose claimant with an intellectual disorder. (*See* Tr. 20, referring to Tr. 321 and 722-23). *See Blakley*, 581 F.3d at 406 (Court must defer to the ALJ's decision if it is supported by substantial evidence even if substantial evidence in the record could support a different conclusion.).

### 2. Functional Equivalence to the Listings

The Court next considers whether claimant's impairments at the time of the Commissioner's periodic evaluation continued to meet or medically or functionally equal the severity of the listing claimant met or equaled at the time of the CPD. 20 C.F.R. § 416.994a(a)(1).

In other words, the Court considers the ALJ's determination that claimant was no longer extremely

limited in one or markedly limited in two childhood functional domains. *See id.* at § 416.926a(d).

(*See* Tr. 22). There is no dispute that claimant continued to experience at least a marked

limitation in acquiring and using information as of May 2019. Plaintiff argues, however, that

claimant continued to experience an extreme limitation in this area.

The ALJ's determination that claimant experienced only a marked as opposed to extreme

limitation in the area of acquiring and using information as of May 13, 2019 is supported by

substantial evidence. (*See* Tr. 24). As explained above, the ALJ relied on the

childhood-functional-domain assessments of the state agency reviewers to reach this conclusion.

(Tr. 25, referring to Tr. 51-65, 909-14).[3] The ALJ noted that their opinions were "fairly detailed"

and "consistent with the evidence" discussed in his decision. (*Id.*). These doctors considered

Dr. Twehues' consultative examination and claimant's educational records, including the

February 2019 teacher questionnaire, January 2018 ETR, and December 2017 CASL-2 results.

(*See* Tr. 52, 56, 59, 61, 911). The Court has already concluded that these signs constituted

substantial evidence supporting the ALJ's finding of a medical improvement related to the

childhood functional domain of acquiring and using information (i.e., the domain related to the

impairments that resulted in claimant's initial disability determination and CPD). These signs,

along with the state agency reviewers' opinion based thereon, support the ALJ's determination

that claimant improved from having an extreme to a marked limitation in this functional domain.

---

[3] Plaintiff argues that Dr. Mirvis's opinion is "not consistent with the evidence of record[,]" but she does not otherwise specifically challenge the ALJ's treatment of this opinion. (Doc. 9 at PAGEID 1140). The ALJ referenced the consistency of Dr. Mirvis's and other state agency reviewers' opinions with the record. (*See* Tr. 23, 25). The Court finds that the ALJ's treatment of these opinions was supported by substantial evidence.

16

Elsewhere in her brief in connection with her Listing 112.05B argument, plaintiff argues that claimant also experienced at least a marked limitation in the mental functioning area of concentrating, persisting, or maintaining pace. (Doc. 9 at PAGEID 1141-42; *see also* Doc. 19 at PAGEID 1181 (discussing evidence of deficits in adaptive functioning)). To the extent that plaintiff implies by this argument that claimant also suffered a marked limitation in the similar childhood functional domain of attending and completing tasks, the Court finds that the ALJ's determination that claimant experienced a less than marked limitation in this domain (*see* Tr. 25-26) is supported by substantial evidence. For his conclusion, the ALJ relied on a July 2016 teacher questionnaire that showed an "obvious problem" in only one of 13 activities related to this childhood functional domain (carrying out multi-step instructions) but that all other activities were unaffected or posed only a "slight problem." (Tr. 26, referring to Tr. 242). The ALJ then referenced a more recent teacher questionnaire noting even fewer problems with this childhood functional domain (i.e., no more than slight problems with any related activity). (*See id.*, referring to Tr. 301 ("[Claimant] is very organized and self-motivated; the activities above are most always completed independently. A great quality is that she wants to both finish tasks correctly and on time.")). The ALJ also referred to Dr. Twehues' note that claimant "maintained good concentration[,]" "did not appear restless or hyperactive, and stayed still in her seat during the entire interview." (*Id.*, referring to Tr. 721). The ALJ also referenced the 2019 IEP remarks that plaintiff was "quiet and focused" and "show[ed] leadership" in completing group projects, even though she sometimes required redirection by her teachers. (*Id.*, referring to Tr. 438). Finally, the ALJ relied on the persuasive opinions of the state agency reviewing doctors, who determined that plaintiff had either no limitation or a less than marked limitation in this functional

domain. (Tr. 59, 61, and 911). The state agency reviewers contrasted claimant's teacher's earlier reports of problems with multi-step instruction, changing from one activity to another, and working without distracting herself with Dr. Twehues' later, related, and more favorable observations during the consultative examination. (Tr. 61, 911). This constitutes substantial evidence to support the ALJ's conclusion that plaintiff suffered no more than a less than marked limitation in the childhood functional domain of attending and completing tasks.

        3.    <u>Listing 112.05B</u>[4]

Plaintiff argues that the record demonstrates that claimant met Listing 112.05B, which the ALJ did not discuss or even mention in his decision. Listing 112.05B provides:

> **Intellectual disorder (see 112.00B4)[5], for children age 3 to attainment of age 18, satisfied by A or B:**
>
> . . .
>
> B. Satisfied by 1 and 2 (see 112.00H):
>
>     1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>         a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;

---

[4] While the Commissioner discusses Listing 112.11 for neurodevelopmental disorders, plaintiff did not discuss this listing in her briefs and any argument related thereto is deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors"), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

[5] Listing 112.00B4 provides additional guidance for an intellectual disorder under Listing 112.05:

    a.  This disorder is characterized by significantly subaverage general intellectual functioning and significant deficits in current adaptive functioning. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.

    b.  The disorder that we evaluate in this category may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as "mental retardation."

    c.  This category does not include the mental disorders that we evaluate under neurocognitive disorders (112.02), autism spectrum disorder (112.10), or neurodevelopmental disorders (112.11).

or

      b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

      a. Understand, remember, or apply information (see 112.00E1); or

      b. Interact with others (see 112.00E2); or

      c. Concentrate, persist, or maintain pace (see 112.00E3); or

      d. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Part 404, Subpart P, App. 1, § 112.05B.

      To meet a listing, claimant's impairments must "satisf[y] all of the criteria of the listing." 20 C.F.R. § 416.925(d) (emphasis added). Where an ALJ does not discuss a listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" her listing finding. *Id.* at 432 (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641-42 (6th Cir. 2013)). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). *See also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

19

At the same time, the ALJ must provide a reasoned explanation regarding whether a claimant meets or equals the listings. *Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020, at \*14-16 (S.D. Ohio Sept. 12, 2014) (discussing an ALJ's obligations in discussing listings in the case of a child applicant). In addition, the fact that an ALJ explicitly considered whether a child claimant functionally equaled a listing does not satisfy the obligation to separately analyze whether a child "meets or medically equals" a listing. *See Dodson v. Colvin*, No. 3:15-cv-0497, 2016 WL 541471, at \*15 (N.D. Ohio Feb. 11, 2016) (collecting cases); *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 n.6 (E.D. Mich. 2012) (collecting cases).

Plaintiff argues that claimant's full-scale IQ scores continued to fall below the threshold identified in Listing 112.05B(1)(a) (*see* Tr. 313 and 721) and the record supports at least marked limitations in the mental functional areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. The Commissioner downplays the significance of claimant's full-scale IQ scores given Dr. Twehues' observation that claimant functioned at a higher level and her diagnosis of a neurodevelopmental as opposed to an intellectual disorder. (*See* Tr. 22, referring to Tr. 723 ("[A]lthough [claimant's] [full-scale IQ score] was 60 at the 2019 mental status examination, [] claimant functioned at a higher level. She was not diagnosed with an intellectual disability. . . .")).

The Court concludes that the ALJ's failure to address Listing 112.05B is not harmless error, and plaintiff has raised a substantial question as to this listing. Initially, the Court notes that contrary to the Commissioner's argument, "a formal diagnosis of mental retardation [now intellectual disability] is not necessary to meet Listings 12.05 and 112.05." *Craig v. Comm'r of Soc. Sec.*, No. 1:14-cv-966, 2015 WL 8207480, at \*13 (S.D. Ohio Dec. 7, 2015), *report and*

20

*recommendation adopted*, 2016 WL 108072 (S.D. Ohio Jan. 11, 2016).   *See also Pennington v.*
*Comm'r of Soc. Sec.*, No. 1:17-cv-264, 2018 WL 3386309, at *12 (S.D. Ohio July 12, 2018)
("There is no authority for the proposition that a claimant must obtain any such [intellectual
disability] diagnosis in order to satisfy Listing 12.05."), *report and recommendation adopted*,
2018 WL 4223135 (S.D. Ohio Sept. 5, 2018); *Breitenstein v. Astrue*, No. 3:10-cv-32, 2011 WL
1235018, at *12 (S.D. Ohio Jan. 6, 2011) ("[I]nstead of requiring evidence of a diagnosis of mental
retardation, the correct analysis focuses on whether the evidence of record meets or equals Listing
12.05's introductory paragraph and 12.05C's criteria."), *report and recommendation adopted*,
2011 WL 1234902 (S.D. Ohio Mar. 30, 2011); *Wilkerson v. Comm'r of Soc. Sec.*, No.
3:08-cv-419, 2010 WL 817307, at *13 (S.D. Ohio Mar. 5, 2010) ("Requiring such a diagnosis in
cases of mental retardation would place formalism over substantive evidence.").   While Dr.
Twehues did not diagnose an intellectual disability, claimant has been consistently identified as an
individual who qualified for special education services based on an intellectual disability through
school evaluations and testing.   (*See* Tr. 311, 326, 552, and 673).   Claimant's test results were
lower than Dr. Twehues expected based on her clinical presentation, yet Dr. Twehues nevertheless
reported that claimant "demonstrated good effort and persistence on all tasks" and considered the
test scores to "reflect a valid estimate of current intellectual abilities."  (Tr. 721).   Thus,
claimant's full scale IQ score of 60 on testing with Dr. Twehues, as well as previous full scale IQs
of 53 on testing in 2016 (Tr. 551) and 2018 (Tr. 326) meet the first component of Listing
112.05B's definition.

As to Listing 112.05B's second component, the ALJ does not discuss the mental functional
areas.   It is therefore "impossible to discern" whether the ALJ's listing decision is based on

substantial evidence.  *See Sizemore*, 2014 WL 4549020, at *16.  Like in *Dodson*, the

Commissioner seems to "gloss[] over" whether "the ALJ was required to conduct a separate meets

or medically equals analysis [] or that he failed to do so" and instead "appears to treat the

meets/equals analysis as being duplicative of, or encompassed by, the decision's functional

equivalence discussion."  2016 WL 541471, at *16.

Plaintiff has raised a substantial question as to whether claimant had extreme or marked

limitations in the four mental functional areas for purposes of Listing 112.05B.  Plaintiff

highlighted claimant's continued struggles with reading comprehension and need for significant

educational supports.  (*See, e.g.*, Tr. 317, 324-25 (January 2018 ERT notes that plaintiff, in eighth

grade, would do best with a second grade reading curriculum and "need[ed] education supports in

order to mitigate cognitive deficits"); Tr. 551 (February 2016 IEP noting claimant's extremely low

working memory index score)); and Tr. 723-24 (Dr. Twehues' note that, despite apparent higher

functioning, "[claimant] is expected to experience academic difficulty as a result of her

neurodevelopmental delay.  . . .  [Claimant] does demonstrate borderline working memory

abilities and extremely low processing speed abilities.  She is likely to have difficulty sustaining

focus. . . .")).  Plaintiff also points to evidence of issues with emotional skills and coping

mechanisms (*see* Tr. 300 (claimant was reluctant to ask for help), Tr. 304 (claimant needed to be

prompted to use coping strategies)) and below average/extremely low scores from her parent and

teacher, respectively, on the Adaptive Behavior Assessment System, 3rd Edition (*see* Tr. 314

(January 2018 ETR)).  This specific evidence related to the second component of Listing

112.05B, coupled with claimant's clear satisfaction of the first component, is sufficient to show

that claimant "reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 433.

**III.   This matter should be reversed and remanded.**

The ALJ's findings that claimant experienced a medical improvement and no longer functionally equaled the listings as she did as of the CPD are supported by substantial evidence. Plaintiff has raised a substantial question, however, regarding the applicability of Listing 112.05B, which the ALJ wholly failed to address in his decision (*see* Tr. 21-22).

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter.   Nor does the current record adequately establish claimant's entitlement to continued benefits. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).   This matter should be remanded for further proceedings, including explicit consideration of Listing 112.05B, consistent with this decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date:  6/21/2022

Karen L. Litkovitz
United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DENITA R. G.,                             Case No. 1:21-cv-515
o/b/o D.T.J.J., MINOR             Black, J.
      Plaintiff,                    Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).